**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JAMES P. SHARKEY, et al.,

                          Plaintiffs,

         - against -

ALLTEC PRODUCTS, INC., et al.,

                         Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 04-0397 (SJF) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiffs James Sharkey ("Sharkey") and Total Laundromat Concepts, doing business as Aquarelle Filtration Systems ("Aquarelle") and defendant Alltec Products, Inc. ("Alltec") agree that the court should grant summary judgment with respect to the plaintiffs' assertion, *see* Docket Entry ("DE") 1, that Alltec's laundry water filtration device infringes on U.S. Patent No. 5,575,913 (issued Nov. 19, 1996) ("the Sharkey Patent"). They part company, however, as to whom that summary judgment should favor. *See* DE 13 (Alltec's motion dated May 12, 2004, for partial summary judgment of non-infringement of the Sharkey Patent), DE 21 (plaintiffs' cross-motion for summary judgment dated June 29, 2004). On October 28, 2004, the Honorable Sandra J. Feuerstein, United States District Judge, referred the parties' motions to me for a report and recommendation. I now submit my report and recommend that the defendants' motion for partial summary judgment on the issue of non-infringement be granted and that the plaintiffs' cross-motion be denied.

I.      <u>Background</u>

      The Sharkey Patent describes a filtration apparatus and a method of using the apparatus for filtering matter such as lint, hair, and dirt out of laundry waste water. The patent consists of a basin containing two chambers separated by an inclined filter attached to the chamber walls.

Laundry waste water passes through the filter from the upper chamber to the lower one, leaving particulate waste in the former. Declaration of Andrew Haimes, DE 25 ("Haimes Dec.") ¶¶ 8-10. The patent's most pertinent feature for purposes of the instant dispute is a "means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto the surrounding wall." Sharkey Patent at col. 7, ll. 31-34.

Many jurisdictions have environmental laws that restrict the amount of particulate waste that commercial laundromats can release. Plaintiff Aquarelle, the exclusive licensee of the Sharkey Patent, is in the business of manufacturing and selling water filtration systems that such laundromats use to comply with such laws. *See id*. at col. 1, ll. 15-17; DE 1 ¶ 11; DE 14 ¶ 1; DE 24 at 1. Alltec competes with Aquarelle in manufacturing and selling such filtration systems, including the accused device at issue in this litigation. Like the plaintiffs' device, Alltec's system – which is not patented and which Alltec asserts is custom manufactured for individual customers – works by "directing unfiltered laundromat water discharge through a pair of inclined filters ... located in a tank or housing." DE 15 at 9; DE 14 ¶ 1.

By letter dated April 2, 2003, plaintiffs' counsel brought the Sharkey Patent to Alltec's attention and advised Alltec that plaintiffs intended to "vigorously enforce any infringement" of the patent. Counsel advised Alltec to examine its filtration system to ensure that it did not infringe on the Sharkey Patent. DE 26 Ex. 4. Alltec examined its system and then responded that its system did not infringe on the plaintiffs' patent. DE 14 ¶ 3. On January 30, 2004, the plaintiffs initiated this lawsuit.

II.     Discussion

   A.     The Applicable Legal Standard

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-3 (1986) (quoting Fed. R. Civ. P. 56(c)).  In determining whether to grant summary judgment, a court is confined to issue-finding, not issue resolution.  *Rasmussen v. Sigma Corp. of America*, 27 F. Supp.2d 388, 391 (E.D.N.Y. 1998) (citations omitted).  The court does not "'weigh the evidence and resolve factual issues'" but rather "'determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried.'"  *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see* Fed. R. Civ. P. 56(c).  A fact is material if it "'might affect the outcome of the suit under the governing law.'"  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'"  *Id*.  In assessing the evidence, "[a]ll factual inferences are to be resolved in favor of the non-movant."  *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994).

In the context of a patent dispute, "because an accused product must contain *every* element of a patent claim, a defendant is entitled to summary judgment on the infringement of a given claim if it establishes that, based on undisputed facts, at least *one* element of that claim is missing from the accused product."  *Display Technologies, LLC v. Mechtronics Corp.*, 335

F. Supp.2d 431, 434 (S.D.N.Y. 2004) (citing *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999)). Conversely, the plaintiffs can prevail on their cross-motion only if the undisputed facts establish that the Alltec system "embodies every limitation in the claim, either literally, or by a substantial equivalent." *Zelinski*, 185 F.3d at 1316. Thus if Alltec is correct that its product lacks a specific element of a Sharkey Patent claim, then its motion for partial summary judgment must be granted and the plaintiff's cross-motion denied. Because I conclude that Alltec is correct in that regard, I do not go on to analyze whether the plaintiffs' motion is otherwise meritorious.

Assessing whether Alltec's device includes the element at issue requires a two-step analysis. First, the court must construe the patent to determine its meaning and scope. Second, the court must compare "the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The first step of construing the patent is a question of law for the court to decide, and the second step of comparing the claim to the accused device is a factual matter. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).

In construing the patent, a court must first consider only intrinsic evidence, including the language of the patent claim itself and the prosecution history, as "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman,* 52 F.3d at 979). In particular the language of the claim itself is especially instructive because it is what "the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his

4

invention." *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201-1202 (Fed. Cir. 2002) (quotation omitted). The patent history is also useful in construing the patent, and is available in this case in the form of the Patent Examiner's file which has been submitted as Exhibit A to the Declaration of Frederick Dorchack. DE 17 ("Dorchack Dec."). Finally, absent a specific definition in the intrinsic evidence, "words are given their ordinary and accustomed meaning as understood by those of ordinary skill in the art." *Zelinksi*, 185 F.3d at 1315. A court may look to extrinsic evidence only if it cannot construe the patent based solely on the intrinsic evidence. *Vitronics*, 90 F.3d at 1582.

    B.    <u>Construction Of The Sharkey Patent</u>

Although the Sharkey Patent consists of fifteen claims, only the first and fourteenth are independent, and even the latter explicitly incorporates all of the limitations of the first claim. Thus, as the parties recognize, the motions for summary judgment stand or fall based on the construction of the Claim 1.[1] That claim reads as follows:

> 1. A filtration apparatus for filtering commercial laundry waste water containing particulate contaminants, said apparatus comprising:
>
> > [1] a housing having a bottom and an upwardly extending surrounding wall, said surrounding wall having an upper edge which defines an inlet for receiving waste water containing particulate contaminants;
>
> > [2] a removably mounted, substantially planar filter element having two opposite ends and having an interwoven filtering material and a surrounding frame disposed in said housing and spanning

---

[1] Dependent claims cannot be infringed if the underlying independent claim upon which they depend has not been breached. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999). As noted above, a judgment of infringement requires that every limitation in a patent claim be found in the accused device. Thus, if any restriction in Claim 1 is not also present in the accused Alltec device, that device cannot infringe upon any claim in the Sharkey Patent.

between said surrounding wall, said filter element spaced between said bottom and said inlet of said housing to form an upper chamber in fluid communication with said inlet and a lower chamber;

[3] means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto said surrounding wall thereby defining said upper and lower chamber, said means for supporting including supporting said frame at an angle with one end of said filter element being lower relative to the opposite end;

[4] a first discharge outlet, in fluid communication with said lower chamber, for discharging filtered waste water;

[5] a second discharge outlet, in fluid communication with said upper chamber adjacent said lower end of said filter element, for discharging filtered particulate contaminants; and

[6] a valve operably connected to said second discharge outlet, said valve having an open position for discharging filtered particulate contaminants from said upper chamber and a closed position for preventing discharge of waste water and particulate contaminants from said upper chamber.

Sharkey Patent at col. 7, ll. 15-50.

The core dispute before the court is whether the accused Alltec device contains the limitations described in the third element of Claim 1. Alltec argues that its system does not infringe on Claim 1, because its device lacks a "'means for releasably and sealably supporting' a frame of a filter element 'substantially about the entire periphery' of the frame 'onto [the] surrounding wall.'" DE 15 at 1. The plaintiffs counter that the third element of Claim 1, properly construed, is present in the Alltec device.

The third element recites "means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto said surrounding wall

6

thereby defining said upper and lower chamber." Sharkey Patent at col. 7, ll. 30-34. Because the third element includes the words "means for" and fails to recite an exact structure for accomplishing the described function, it is presumed to be written in the means-plus-function format as permitted by the sixth paragraph of 35 U.S.C. § 112. *See B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). That provision permits a claim element to be expressed as a means for performing a specified function.

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. §112 ¶ 6. The parties appear to agree that this element is written in the means-plus-function format, and the patent itself supports such a reading.

By writing its patent in the means-plus-function format, Sharkey took on the burden of linking the function to be performed with the mechanism for performing it. This is because absent § 112 ¶ 6, claim language disclosing only a means for performing a function, without also disclosing the structure being patented, might fail for being indefinite. The Federal Circuit has thus interpreted § 112 ¶ 6 to apply only to structures identified in the patent description and their equivalents rather than to every means for performing the specified function. *See Laitram Corp.* 939 F.2d 1533, 1536 (citing *Jonsson v. Stanley Works*, 903 F.2d 812, 819 (Fed. Cir. 1990)); *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1201 (Fed. Cir. 1987)).

When construing an element of a claim written in the means-plus-function format, the court must first determine what function is claimed in the pertinent clause, and then find the "corresponding structure" in the written description of the patent that accomplishes that function.

7

*Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). In determining the corresponding structure, "the statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim; [n]or does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Id*. (citation omitted). The Federal Circuit has held that a "structure disclosed in the specification is [a] 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *B. Braun Medical*, 124 F.3d at 1424. That duty to link or associate structure to function "is the quid pro quo for the convenience of employing" the means-plus-function format. *Id*. (citation omitted).

As noted, the dispute here is whether Alltec's device infringes on the third element of the first claim of the Sharkey Patent. That element refers to a "means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto said surrounding wall," Sharkey Patent at col. 7, ll. 30-34, and the parties appear to agree that such is the relevant function. The dispute thus turns on a determination of the corresponding structure that accomplishes that function.

The plaintiffs argue that the corresponding structure is a support attached to the interior wall of the housing. DE 22 at 8 (citing Sharkey Patent at col. 3, ll. 42-44; *see also id*. at col. 5, ll. 3-5). The defendants argue that the corresponding structure has two components that together serve to perform the relevant function: a continuous rubber support that performs the function of sealably supporting the frame substantially about the entire perimeter, and pivotal latch arms that

perform the function of releasably supporting the frame. DE 15 at 17 (citing Sharkey Patent at col. 3, ll. 30-34 & col. 5, ll. 13-21). I analyze each in turn.

1. Plaintiffs' Proposed Corresponding Structure

The plaintiffs' proposal that the corresponding structure is "a support attached to the interior surface of the surrounding wall for support of said filter element," DE 22 at 8, would result in a broad construction of the Sharkey Patent that is, as explained below, at odds with its prosecution history. I therefore reject it. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) ("positions taken before the PTO [Patent and Trademark Office] may bar an inconsistent position on claim construction under §112, ¶ 6.") (quoting *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed. Cir. 1996)).

The plaintiffs' proposal incorporates a prior claim that was rejected by the Patent Examiner as not defining over the prior art. *See* DE 17, Declaration of Frederick J. Dorchack ("Dorchack Dec.") Ex. A (contents of PTO official prosecution file history for the Sharkey Patent) (the "Sharkey Patent History"). Specifically, in the initial application for what became the Sharkey Patent, the independent claim made no reference to a support for the filter. Instead, it recited, as dependent Claim 9, a "filtration apparatus according to Claim 1, wherein said housing further includes *a support attached to the interior surface of said surrounding wall* for support of said filter element." Sharkey Patent History at 34 (emphasis added). The Patent Examiner rejected that claim pursuant to 35 U.S.C. § 102(b) as being anticipated by several prior patents. *Id*. at 48-49. In his interview notes dated December 14, 1995, the examiner recorded, among other things, that "applicant proposes to a recite a 'planar rectangular filter element' which includes *'releasable locking means for sealingly engaging the filter support.' Such does not*

9

*appear to be taught by Striedieck* [U.S. Patent No. 4,784,169 (Nov. 1988)], however further [illegible] will [illegible] performed upon filing of the [amendment]." *Id*. at 52 (emphasis added).

Sharkey later submitted an amended patent application that dropped Claim 9 and added the following element to Claim 1: "a support attached to said surrounding wall for *releasably and sealably* supporting said frame of said filter element thereon, so that frame is disposed at an angle so that one end of said filter element is disposed at an angle..." *Id*. at 56 (emphasis added). In explaining how the new description overcame the examiner's earlier objections, Sharkey highlighted several things, including the facts that "Claim 1 has been amended to recite a '<u>removable filter element</u>'" and that the "filtration apparatus ... now includes a '<u>support</u> attached to the surrounding wall for <u>releasably and sealably</u> supporting said filter element thereon ...'"). *Id*. at 60 (emphasis in original); *see also id*. at 63 (noting that prior patent "does not teach or suggest, as recited in Claim 1, a <u>support</u> attached to the surrounding wall of a housing for '<u>releasably and sealably supporting</u>' a '<u>removable filter element</u> thereon'.") (emphasis in original).

The Patent Examiner discussed the amended application with Sharkey's attorney, and the two agreed to amend the application further so that it would "define over the art of record." *Id*. at 64. In a supplemental amendment filed immediately after their discussion (both the notes and the supplemental amendment are dated April 12, 1996, *see id*. at 64, 70-71), Sharkey's attorney highlighted two revisions to the application of relevance here. First, the reference to a "removable" filter element was changed to describe a "removably mounted" element. Second, the amended application replaced the phrase "a support attached to said surrounding wall for releasably and sealably supporting said frame of said filter element thereon" with the phrase

10

"means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto said surrounding wall." *See id*. at 66.

It is against this history that I consider the plaintiffs' contention that the corresponding structure is simply "a support attached to the interior surface of the surrounding wall for support of the filter element". The plaintiffs argue that this history shows a clear link between their proposed corresponding structure and the relevant function, because "the means-plus-function clause is the progeny of the support attached to the interior surface of the surrounding wall." DE 22 at 9.

I disagree. The Patent Examiner presumably "did his duty and knew what claims he was allowing." *IXYS Corp. v. Advanced Power Technology, Inc.*, 321 F. Supp.2d 1133, 1141 (quoting *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989)). He would not have denied the initial patent application and accepted the amended language unless the amendments made after he noted his objections were necessary to define over the prior art. If the Patent Examiner sought further amendment of a claim for "a support attached to the interior surface of said surrounding wall for support of said filter element" but then accepted a claim for a "means for releasably and sealably supporting said frame of said filter element substantially about the entire periphery of said frame onto said surrounding wall," then there must be something about the difference between the two that was dispositive.

The plaintiffs' proposed construction would cover all equivalents to a "support attached to the interior surface of the surrounding wall for support of said filter element." As a result, it would ignore that lesson of the patent prosecution history because it would allow the patent to cover the prior art listed in the examiner's notes. To properly respect the patent prosecution

11

history, the corresponding structure must include something more than a support for the frame; it must perform the entire corresponding function. To do so it must have several attributes: it must provide support for the frame; it must provide such support "substantially about the entire periphery" of the frame;[2] it must do so in a way that creates a seal; and it must do so in a way that allows the frame to be released. Because the plaintiffs' proposed corresponding structure lacks some of those attributes, I recommend against adopting it.

### 2. Alltec's Proposed Corresponding Structure

While the plaintiffs propose a broadly defined corresponding structure, Alltec, as noted above, proposes a very narrowly defined corresponding structure consisting of two separate components: a support for the filter "fabricated from a continuous rubber material which forms a seal with said frame of the filter element," DE 15 at 17 (citing Sharkey Patent, at col. 3, ll. 30-34), and pivotal latch arms that hold the filter down against the rubber support. *Id.* (citing Sharkey Patent at col. 5, ll. 13-21). There is no question that between them, these two structures

---

[2] The plaintiffs contend that under their proposed construction, which encompasses any supporting apparatus attached to the interior wall, Alltec's device would infringe despite the fact that the Alltec device's filters are "not supported onto the surrounding wall of the tank along their upper edge at all." DE 14 ¶ 53 (citing DE 16 ¶ 2); *see also* DE 24 at 24. They offer extrinsic evidence to support the proposition that "substantially about the entire perimeter" means nothing more than that "the frame is supported around the periphery a not insubstantial amount and more than taught by [two earlier] patents." DE 22 at 21. However, a court may only look to such extrinsic evidence if intrinsic evidence alone does not suffice to construe the patent. *Vitronics*, 90 F.3d at 1582 (citing *Markman,* 52 F.3d at 979). The Sharkey Patent contains only one embodiment of the structure that performs the relevant function, and that embodiment clearly supports the filter on all sides. *See* Sharkey Patent at Fig. 1 & col. 5, ll. 5-8. There is thus no basis for considering extrinsic evidence. *See Markman*, 52 F.3d at 980-81. Indeed, the plaintiffs seek to use extrinsic evidence to escape the patent's plain meaning rather than to explain an ambiguity that remains after consulting the intrinsic evidence. Accordingly, the fact that the plaintiffs' proposed corresponding structure would cover any device (including Alltec's) that fails to support the filter "substantially about the entire perimeter" is further reason to doubt their proposal's merit.

embody all of the attributes that a corresponding structure must have in order to respect the patent's prosecution history: the rubber support does provide support for the filter frame, it provides such support substantially about the frame's entire periphery, and by definition it creates a seal. The two components also unquestionably "releasably" support the filter frame: nothing about the rubber support material prevents the frame from being released, and the latch arms serve to hold the frame down against the rubber support in the locked position but allows the frame to be released when in what the patent itself calls the "release position." Sharkey Patent at col 5, l. 18.[3]

The plaintiffs object to Alltec's proposal by relying on the doctrine of claim differentiation and by arguing that the pivoting latch arms are superfluous because "releasably," properly understood, is synonymous with "removably." I find neither objection persuasive for the reasons explained below.

      a.      <u>Claim Differentiation</u>

The plaintiffs contend that the doctrine of claim differentiation forbids Alltec's proposal because dependent Claim 8 of the Sharkey Patent specifically recites the rubber support that Alltec proposes as the first component of its proposed structure and also because dependent Claims 12 and 13 refer to the latch arms that comprise the second component. "Under the

---

[3]     Preferably, housing **20** includes a plurality of releasable locking means **47** for releasably locking the frame **44** of filter element **40** in a fixed position in housing **20.** Releasable locking means **47** may comprise pivotal latch-like arms mounted on each of the sidewalls **25**, **26** and **27** for movement between a release position (shown in phantom in FIG. **1**) and a locking position with respect to the frame **44**, in the latter position of which it either closely abuts or is received within a corresponding slot **51** in frame **44**.

Sharkey Patent at col. 5, ll. 13-21.

13

doctrine of claim differentiation, each claim in a patent is presumptively different in scope." *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (citing *Comark Communciations, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)).

The plaintiffs are correct in insisting on consideration of those dependent claims. As the Federal Circuit has noted, examining the other claims in a patent "may provide guidance and context for interpreting a disputed means-plus-function" clause. *Id*. The doctrine of claim differentiation prevents the court from reading a limitation contained only in a subsequent dependent claim into the preceding independent claim. *Id*. at 1234 (citing *Karlin Technology Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 972 (Fed. Cir. 1999).

However, claim differentiation "is not a 'hard and fast rule of construction,' and cannot be relied upon to 'broaden claims beyond their correct scope.'" *Id*. (citing *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1533, 1538 (Fed. Cir. 1991). Rather, the doctrine is no more than "a judicially developed guide to claim interpretation" which cannot override the statutory requirements for using the means-plus-function format. *Laitram*, 939 F.2d at 1538. Of particular relevance here, "the stringencies of a means-plus-function limitation are not to be avoided by the mere addition of a dependent claim that recites the corresponding structure disclosed in the specification." *Wenger*, 239 F.3d at 1234 (interpreting the holding in *Laitram*). Rather, "if a claim will bear only one interpretation, similarity will have to be tolerated." *Laitram*, 939 F.2d at 1538. In other words, "[a] means-plus-function limitation is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure." *Id*.

There is precisely that kind of tension between the plaintiffs' proposed open-ended interpretation of the Sharkey Patent's Claim 1 and Alltec's narrower reading of the claim. With respect to the supporting structure, Alltec's proposal – a continuous rubber support that forms a seal with the frame filter – exactly tracks the contents of Claim 8. The plaintiffs, relying on claim differentiation, see that as a reason to reject the proposal; but that position leads them, as discussed above, to a proposal that is impermissibly broad and inconsistent with the patent's prosecution history.

Dependent Claim 8 does not recite an additional limitation that is not present in independent Claim 1. Instead, it merely states a specific structure which performs the limitation contained in the independent claim. This is similar to the situation in *Laitram*. In that case, the Federal Circuit rejected a similar objection based on the doctrine of claim differentiation because the independent means-plus-function claim covered not only the specific structure recited in the dependent claim, but also any equivalent. The dependent claim thus remained differentiated from the independent claim, albeit only in the sense that it defined a specific subset of the structures covered by the independent claim. *Laitram*, 939 F.2d at 1538. So too here: dependent Claim 8, by referring to a continuous rubber material that forms a seal with the filter's frame, recites one specific way to produce a structure that accomplishes the function described in independent Claim 1 of sealably (and possibly releasably, as discussed below) supporting the frame substantially about the frame's entire periphery. There may well be equivalent ways to do the same; if so, they would not be literally covered by Claim 8, but would, if Alltec's proposal is correct, be covered by Claim 1 pursuant to § 112 ¶ 6. *See id*.

The plaintiffs' reliance on Claims 12 and 13 with respect to the pivotal latch arms that Alltec proposes as another component of the corresponding structure is similarly misplaced. One way to accomplish the function of releasably supporting the frame is to lock it in place with a mechanism that can be released, as described in dependent Claim 12 (another, presumably, might be to affix the frame to the support with some sort of releasable adhesive comparable to Velcro or the mucilage used in self-stick note pads), and one such mechanism is the pivotal latch arm described in dependent Claim 13 (another, presumably, might be a removable bracket). If Alltec's proposal is correct, then the dependent claims remain differentiated from Claim 1 because the latter would still cover all equivalents of the pivotal latch arms, but Claims 12 and 13 would not. Accordingly, I conclude that the doctrine of claim differentiation does not preclude Alltec's proposal for the corresponding structure.

          b.      <u>"Releasably" and "Removably"</u>

The plaintiffs object to Alltec's proposed inclusion of the latch arms as part of the corresponding structure because, in their view, it is only the supporting apparatus that corresponds to the third element of Claim 1, and that no mechanism to hold the filter down against the supporting apparatus is contemplated by that element. They argue that a person reasonably skilled in the art of waste water filtering would understand the word "releasably," as used in the context of Claim 1, to mean that the support is fashioned in such a way that it permits the filter element to be removed. DE 22 at 17; Haimes Dec. ¶ 35. They point out that the second element of Claim 1 calls for a "removably mounted" filter element and that the third element three provides the means for supporting that removable filter. Therefore, they contend, the use of "releasably" in the third element connotes a configuration of the support that permits the filter to

16

be removed from it. *Id.* They contrast this understanding of "releasably" to a support that would permanently attach the filter element. *Id.*

I find such argument unpersuasive. First, it appears to run counter to the patent's own terms. The plaintiffs' position is that the only structure that performs the function of the third element of Claim 1 is the support component – that is, the apparatus underneath the filter frame (regardless of whether that apparatus must be continuous rubber support or some broader class of supporting structures). But if that is the case, the language of Claim 12 makes no sense: that claim describes the locking mechanism (further defined in Claim 13 as the latch arm) in reference to Claim 1 and its "said means for supporting" the filter. Such language indicates that the latch arms are part of the "means for supporting" the filter – and we know from the third element of Claim 1 that the filter is to be supported "releasably" (among other ways). To the extent that the latch arms perform a function, the patent's text thus indicates that the function is tied to the third element of Claim 1, and the plaintiffs should not be heard to argue otherwise.

Second, the plaintiffs' argument is unpersuasive as a matter of etymology. "Releasably" is obviously derived from "release," and as the plaintiffs acknowledge, the plain meaning of the verb "release" is to "free from something that binds, fasten, or hold back; let go." DE 22 at 16 (citing *American Heritage Dictionary of the English Language* at 1524 (3rd ed. 1992)). That definition explicitly refers to "something" that performs the function of binding, fastening, or holding back the thing being freed. That "something" is plainly not the supporting apparatus – the latter supports the frame but does not bind, fasten, or hold it to anything.[4] The only things

---

[4] Arguably, the supporting apparatus holds the filter against the force of gravity and removing the filter from the support therefore releases it from the grip of gravity. But such an interpretation renders "releasably" entirely redundant as a modifier of "supporting." A support

17

described in the Sharkey Patent that bind or fasten the frame to the supporting apparatus are the latch arms – and they do so not permanently, but in a releasable way. In short, the word "releasably" is *not* synonymous with "removably" as the plaintiffs contend. Alltec's construction respects the plain meaning of the words of Claim 1; exclusion of the latch arms from the description of the corresponding structure does not.

        3.        <u>Applying The Recommended Construction To The Alltec Device</u>

For the reasons set forth above, I recommend that the court adopt Alltec's proposed construction of the corresponding structure that performs the function described in the third element of Claim 1 of the Sharkey Patent. Applying that construction to the instant dispute leads me to conclude, as explained below, that the accused Alltec device does not infringe the Sharkey Patent. Specifically, the Alltec device contains neither component of the corresponding structure – the latch arms or the continuous rubber support which forms a seal with the frame – and also lacks any equivalent of the components of the corresponding structure.

First, the filter in the Alltec device is not supported by a continuous rubber material which forms a seal with the filter frame. As Alltec notes in its statement of undisputed facts, "[n]o rubber gasket or other gasket material is used between the filter elements of the Alltec system and the tank walls." DE 14 ¶ 57.[5] As a result, the accused device does not have a

---

always holds the thing supported against the force of gravity so as to keep it from falling – as the plaintiffs acknowledge. *See id*. (quoting dictionary definition of "support" as "to bear the weight of, especially from below ... to hold in position so as to keep from falling, sinking, or slipping").

[5] The plaintiffs dispute the cited paragraph, but only with respect to another sentence that asserts the lack of a rubber gasket allows lint to escape around the edges of the filter to a secondary filter in Alltec's system. The plaintiffs do not dispute the factual assertion that there is no gasket, rubber or otherwise, between the filter element and the tank walls. *See* DE 24 at 26.

structure that supports the filter's frame either "sealably" or "substantially about the entire periphery." Second, there is no dispute the Alltec device lacks anything that corresponds to the latch arms. As a result, the accused device does not have a structure that "releasably" supports the filter's frame.[6]

The accused Alltec device lacks the limitation contained in the means-plus-function clause of the third element of independent Claim 1 of the Sharkey Patent. Because independent Claim 14 contains an identical apparatus to Claim 1, the accused Alltec device does not infringe on that claim, either. And since all other claims in the Sharkey Patent are dependent on either Claim 1 or Claim 14, they incorporate every element of the independent claims by reference and the accused Alltec device does not infringe those claims.

III.     Recommendation

For the reasons set forth above, I recommend that Alltec's motion for partial summary judgment of noninfringement be GRANTED and that the plaintiffs' cross-motion for summary judgment of infringement be DENIED.

---

[6] Even if the corresponding structure is interpreted so as to exclude the latch arms – that is, if Alltec's proposal of the continuous rubber material as a component of the corresponding structure is accepted but its proposal of the latch arms as an additional component is rejected – the accused device still would not infringe the Sharkey Patent. The undisputed lack of any supporting structure that supports the frame on all four sides or creates a seal is fatal to the plaintiffs' infringement claim even if, as the plaintiffs contend, "releasably" should be understood as synonymous with "removably." Nevertheless, because the proper method for assessing the instant motions is to construe the patent first and only then to consider the accused device against the correct construction, the court should not refrain from what might appear to be an otherwise unnecessary determination of the dispute about the latch arms.

IV. <u>Objections</u>

A copy of the Report and Recommendation is today being served on all parties by means of the court's Electronic Case Filing system. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED,**

Dated: Central Islip, New York
      June 24, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge